IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL SMITH, <br> K57543, <br>               **Plaintiff,** <br> vs. <br> LT. SULLIVAN, <br> S. MATTHEWS, <br> D. GALLOWAY, <br> CORRECTIONAL COUNSELOR LOVE, <br> LT. BANKS, <br> B. ALLARD, <br> J. BONNETT, <br>               **Defendants.** | Case No. 24-cv-2521-MAB |

# <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

Plaintiff Michael Smith, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Shawnee Correctional Center (Shawnee), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff describes a variety of events all linked to alleged harassment by Defendant Sullivan. Plaintiff also seeks recruited counsel (Doc. 3), and he has filed a few motions (Docs. 8, 10, 13).

Plaintiff's Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### **The Complaint**

Plaintiff alleges that on May 26, 2024, Defendant Sullivan entered his cell while he was urinating and demanded that he display his genitals for inspection. (Doc. 1 at 6). He informed Sullivan that he needed a minute to finish urinating and to compose himself, but Sullivan refused and then engaged in verbal harassment of a sexual nature. By way of background, Plaintiff explains that he takes water pills, which create a frequent need to urinate. (Doc. 1 at 22). Plaintiff asked for a grievance form, but Sullivan refused, and Sullivan commented that Plaintiff's yard time would be cancelled, which proved true that day. (Doc. 1 at 6).

Plaintiff filed a complaint in a locked grievance box about the incident in accordance with PREA (the Prison Rape Elimination Act). (Doc. 1 at 15). He claims only Defendants Matthews and Allard had access to the locked box. Plaintiff sought three status updates from Matthews about his grievance in the month of June 2024 but Matthews did nothing. Plaintiff also inquired with the records office, and on June 11,

---

the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

2024, Defendant Allard responded. Plaintiff then submitted a second emergency grievance about the incident, naming Defendants Sullivan, Love and Matthews. He also contacted the Illinois Attorney General's Office about the issue. (Doc. 1 at 15). Plaintiff sought further status updates in mid-June 2024.

On or around June 26, 2024, Plaintiff was interviewed by a non-party officer, and he was sent to segregation. (Doc. 1 at 16). He explains that the PREA coordinator and prison's compliance manager were then notified. On June 28, 2024, he filed a third emergency grievance about the incident, this time naming Defendants Sullivan, Matthews, Allard, a grievance officer, and the Chief Administrative Officer, for "constitutional violations related to supervisory liability, spoilation of evidence, the right of court access, and the right to petition the government for redress of grievances." (Doc. 1 at 16). Plaintiff submitted a fourth emergency grievance on the same topic on July 5, 2024. (Doc. 1 at 16).

Plaintiff alleges that after his fourth grievance, Defendant Sullivan harassed him on three dates during dining hall movement. (Doc. 1 at 16-17). Around July 24, 2024, Plaintiff submitted a fifth grievance about these incidents naming Defendants Sullivan, Love, and Banks. At this time he also wrote Defendant Bonnett (an Administrative Review Board member) about "new incidents and the appeal of the PREA related grievances." (Doc. 1 at 17). Plaintiff wrote Bonnett again on July 30, 2024. He alleges Bonnett's actions "were necessary to a solution and became part of the problem by not taking actions, to address ongoing concerns." (Doc. 1 at 18).

Plaintiff alleges that on August 16, 2024, he was charged via disciplinary report with intimidation or threats towards Allard (Matthews' supervisor) about his grievances and this incident. (Doc. 1 at 18). He claims he immediately filed a grievance about the disciplinary report. He claims he also began trying to avoid Matthews, but Matthews approached him asking for personal information without justification. On October 27, 2024, Plaintiff tried to file a grievance about a variety of issues with his confinement, but Matthews confiscated and destroyed it. (Doc. 1 at 18).

Plaintiff complains that PREA reporting and investigation procedures are "mandatory and not discretionary," and that his PREA report was not properly investigated. (Doc. 1 at 19).

Plaintiff faults Defendant Sullivan for cruel and unusual punishment when he denied him access to the bathroom on May 26, 2024. (Doc. 1 at 19). He complains Sullivan also violated his Fourth Amendment right during this encounter by demanding that he display his genitals, (Doc. 1 at 20), and that he violated his First Amendment right by cancelling his gym time out of retaliation. He faults Defendant Matthews for intentionally destroying his grievances and denying him court access. (Doc. 1 at 20). He faults Galloway (the Warden) both for having knowledge of the situation from his grievances but failing to act, and for supervisory liability. (Doc. 1 at 20-21). He faults Defendants Love and Banks for failing to properly and thoroughly investigate his PREA report or for their responses to grievances about the issue. (Doc. 1 at 21). He faults Defendant Allard for failing to initiate a PREA investigation and for failing to supervise Matthews and Love. (Doc. 1 at 21-22). Finally, he faults Defendant Bonnett for violating

his Fourteenth Amendment rights by failing to perform an adequate PREA investigation and/or for failing to adequately investigate his grievances. (Doc. 1 at 22).

In support of the complaint, Plaintiff submitted a memorandum of law. (Doc. 1 at 23-30). In the memorandum, he argues that Sullivan was also deliberately indifferent to his need to use the toilet, which is a side effect of his serious medical conditions. (Doc. 1 at 24). In the memorandum, he argues that Warden Galloway personally participated in the harms he described by delegating authority to review grievances to Defendant Love. (Doc. 1 at 28). He also faults Galloway for appointing Banks to participate in the investigation, and Banks for failing to make adequate findings as required by Illinois law. (Doc. 1 at 29). Plaintiff further faults Defendant Love for failing to tell Galloway that he could not handle Plaintiff's complaints because he was already handling other PREA grievances about Sullivan and thus he had a conflict of interest. (Doc. 1 at 29).

In further support of the complaint, Plaintiff submitted various grievance documentation, his written statement about the August 2024 disciplinary report, and his correspondence with various prison officials. Plaintiff seeks monetary relief, and an admission from Defendants Sullivan and Matthews that they have violated his rights. (Doc. 1 at 7).

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** **Fourth Amendment or Eighth Amendment cruel and unusual punishment claim against Defendant Sullivan related to his interruption of Plaintiff's use of the toilet on May 26, 2024, or his demand that Plaintiff display his genitals;**

>    **Claim 2:**      First Amendment retaliation claim against Defendant Sullivan for threatening to deprive Plaintiff of recreation when he asked for a grievance and then actually depriving him of recreation on May 26, 2024;
>
>    **Claim 3:**      First Amendment retaliatory discipline claim against Defendant Matthews regarding the August 2024 disciplinary ticket;
>
>    **Claim 4:**      Eighth or Fourteenth Amendment claim against Defendants Matthews, Galloway, Love, Banks, Allard and Bonnett for their handling of Plaintiff's PREA report and/or grievances about the May 26, 2024, incident.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

The Seventh Circuit has recognized that an inmate may have a protected privacy interest during a visual strip search under the Fourth Amendment, *Henry v. Hulett*, 969 F.3d 769, 779-80 (7th Cir. 2020), and that a search done in harassing or humiliating manner may invoke the Eighth Amendment's prohibition on cruel and unusual punishment, *King v. McCarty*, 781 F.3d 889, 897-98 (7th Cir. 2015). On the facts alleged, Plaintiff may proceed against Defendant Sullivan on Claim 1 in that his conduct upon entering Plaintiff's cell on May 26, 2024, violated the Fourth or Eighth Amendments by harassing or humiliating Plaintiff or intentionally causing him distress for no reason.

However, to the extent that Plaintiff argues that Sullivan violated his Eighth Amendment right by exhibiting deliberate indifference to his serious medical need by interrupting his ability to urinate, the Court finds that this aspect of Claim 1 is underdeveloped. Plaintiff alleges in his memorandum of law that Sullivan disregarded his medical need, which was serious and was diagnosed by a physician as needing care, but these assertions are overly formulaic and focus more on the legal elements of a deliberate indifference claim than they do on Sullivan's own actions or mental state. Plaintiff also does not describe how long Sullivan's actions impacted his ability to access the restroom, but it appears the interruption was relatively short, which takes away from the notion it amounted to deliberate indifference to a serious medical need. As such, this aspect of Claim 1 fails to state a plausible claim for relief and Plaintiff may not proceed on this theory in Claim 1 In sum, Plaintiff can proceed on a Fourth or Eighth Amendment claim against Sullivan for the strip search done in an allegedly harassing or humiliating manner. However, to the extent Plaintiff seeks liability against Sullivan related to his use of the toilet, Plaintiff has failed to state a claim on the facts alleged and this portion is dismissed.

As for Plaintiff's retaliation claim, to plead a retaliation claim an inmate must allege that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Plaintiff alleges that he asked for a grievance form, Sullivan then refused and told him he would

cancel his recreation time that day, and his recreation time was cancelled later that evening. At this preliminary juncture, these allegations are sufficient to proceed on Claim 2, though it is not yet clear if Sullivan actually played any role in cancelling the evening recreation time. But it is worth noting that suspicious timing alone is not enough to establish retaliation. If Plaintiff cannot link the cancelled recreation time to Sullivan's personal actions, it is likely this claim will ultimately fail. *See e.g., Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (suspicious timing is rarely sufficient to establish retaliation).

In Claim 3, Plaintiff alleges he got a disciplinary ticket on August 16, 2024, which he appears to claim was retaliation by Defendant Matthews for his attempts to get his grievances or PREA report investigated. (Doc. 1 at 17-18, 20). He does not indicate the outcome of this disciplinary ticket. His attached statement to the disciplinary committee does not cast much light on the issue, other than that it seems to indicate the entire incident was somehow related to a settlement agreement in another case. Given the scarcity of information about the ticket and surrounding circumstances, the Court finds that Plaintiff's allegations of retaliatory discipline are insufficiently pled and Claim 3 will be dismissed without prejudice.

As for Claim 4, Plaintiff faults numerous prison officials for their handling of his grievances and PREA complaints about the May 26, 2024, incident. There are multiple reasons that Plaintiff cannot succeed on these theories as pled. First, the Prison Rape Elimination Act facilitates the reporting and processing of claims related to sexual abuse while incarcerated, but it does not create a private cause of action, so Plaintiff does not

have an enforceable right associated with PREA. *See e.g., Sims v. Doe*, 2018 WL 4027632 (S.D. Ind. Aug. 22, 2018); *Bentley v. Baenen*, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018) ("The PREA does not create a private cause of action in federal court."); *Poslof v. Martel*, 2018 WL 3019916, n.5 (S.D. Cal. June 18, 2018) (The PREA "authorizes the reporting of incidents or rape and sexual abuse in prison, but it does not give rise to a private cause of action by a prisoner."). Second, to the extent that Plaintiff complains that officials failed to follow procedures in the Illinois Administrative Code related to his PREA report, violations of state laws or prison rules or regulations do not give rise to a claim under § 1983. *See e.g., Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, prison regulations, or prison policies). Third, Plaintiff faults the Defendants for their handling of his grievance, but there is no protected interest in the grievance process itself. *See e.g., Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (grievance procedures are not mandated by the First Amendment and do not by their very existence create protected interests, so the alleged mishandling of grievances by those who did not participate in the underlying wrongdoing does not state a claim). Fourth, Plaintiff faults a number of the defendants for "supervisory" liability on the premise that they delegated to subordinates or failed to ensure subordinates took adequate actions. There is no supervisory liability under § 1983, so these assertions fail as presented. *See e.g., Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (there is no supervisory liability under § 1983, and defendants may only be held responsible for their personal acts or decisions).

At best, Plaintiff argues that some of the defendants were notified of his plight via detailed grievances and correspondence, but he was dissatisfied with the thoroughness of their response. There is a narrow window to hold officials responsible for their handling of grievances if the grievances or correspondence are highly detailed and speak of an obvious risk of serious harm. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference); *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) (allowing an inmate to proceed against a warden on a conditions of confinement claim where the warden signed a grievance response about the conditions at issue). However, here, it seems that Plaintiff is simply dissatisfied with how the officials decided to handle an investigation or grievance response, rather than alleging they did nothing at all. Thus, the Court finds Claim 4 insufficient as pled.

## Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel. (Doc. 3). Plaintiff explains that he believes he will need assistance with this case to complete difficult tasks like taking depositions, making arguments in court, etc. (Doc. 3 at 1). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff attached proof of his own efforts to recruit counsel, but the Court does not yet

find that the difficulty of the case exceeds Plaintiff's ability. Plaintiff's complaint was sufficient to state a claim, and service will now be effectuated by the Court. Typically, the first step of discovery in a § 1983 case involves the limited issue of exhaustion of administrative remedies, long before the case reaches complex tasks like depositions or live arguments. At this time, the Court finds that Plaintiff is capable of adequately representing himself, but he may renew his request for counsel later.

## Motions

Plaintiff's Motion for the Court to take judicial notice (Doc. 8) is **DENIED** as **MOOT**. In the motion he complains of issues with the prison's submission of his trust fund documentation, but the necessary documents have now been received.

Plaintiff's Motion Requesting a free copy (Doc. 10) is also **DENIED** as **MOOT**. He complains that he received a notice of electronic filing for his complaint, but not a complete copy, and that he needs a complete copy to reference in the future. The Court does not provide full copies to litigants of the materials that they file, and it is the litigant's own responsibility to make or keep copies of documents that they need. Plaintiff may request a full copy from the Clerk of Court via letter, but he will need to pay the $0.50 per page cost.

Plaintiff's Motion and Notice of Extraordinary Circumstances (Doc. 13) is **DENIED**. In the Motion, Plaintiff complains of new recent developments and he discusses injunctive relief, but the Court cannot grant injunctive relief beyond the scope of the operative claims, which relate only to events on May 26, 2024. If Plaintiff believes

that new developments require relief, he will have to file an amended pleading or a new separate case.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive against Defendant Sullivan.  By contrast, **Claims 3 and 4** are dismissed for failure to state a claim.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Matthews, Galloway, Love, Banks, Allard, and Bonnett because Plaintiff has failed to state sufficient claims against these defendants.

Plaintiff's Motions (Docs. 3, 8, 10, 13) are all **DENIED**.

The Clerk of Court is **DIRECTED** to prepare for Defendant Sullivan: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation

of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

**Dated: February 19, 2024**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## **Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.